Edward W. Floyd, Esq.
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016
212.779.9910
efloyd@evw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

LOUIS DREYFUS COMPANY FREIGHT ASIA PTE LTD
(f/k/a LOUIS DREYFUS COMMODITIES FREIGHT ASIA
PTE LTD),

Case No.: 17-cv-2476

Plaintiff,

-against-

**VERIFIED COMPLAINT IN
ADMIRALTY**

UTTAM GALVA METALLICS LIMITED, and
UTTAM GALVA STEELS LIMITED.

Defendants.
-----------------------------------------------------------------------x

Plaintiff, Louis Dreyfus Company Freight Asia Pte Ltd (f/k/a Louis Dreyfus
Commodities Freight Asia Pte Ltd) ("LDCF" or "Plaintiff"), by its attorneys, Eaton & Van
Winkle LLP, for its Verified Complaint in Admiralty against Defendants, Uttam Galva Metallics
Limited ("UGML") and Uttam Galva Steels Limited ("UGSL") (collectively, "Defendants"),
upon information and belief, alleges as follows:

## JURISDICTION

1.      This is a case of admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules for Admiralty or Maritime Claims.

## PARTIES

2.      At all relevant times, Plaintiff was and still is a corporation or other business entity organized and existing under the laws of a foreign country with an office and place of business located in Singapore.

3.      At all relevant times, Defendant UGML was and still is a corporation or other business entity organized and existing under the laws of India with an office and place of business at Uttam House, 69, P. D'Mello Road, Mumbai, India 400009.  As is further described below, as well as reflected by its entity name's reference to "Uttam Galva" and its office presence at "Uttam House," UGML is also part of the Uttam Galva group.

4.      At all relevant times, Defendant UGSL was and still is a corporation or other business entity organized and existing under the laws of India with an office and place of business located at Uttam House, 69, D'Mello Road, Mumbai, India 400009.  As is further described below, as well as reflected by its entity name's reference to "Uttam Galva" and its office presence at "Uttam House," UGSL is also part of the Uttam Galva group.

## UNDERLYING EVENTS

5.      This maritime attachment action arises from UGML's breach and/or repudiatory breach of two, long-term maritime contracts of affreightment or "COA(s)."

6.      The underlying merits of Plaintiff's claims against UGML are being submitted for arbitration pursuant to the provisions of those COAs.  LDCF accordingly brings this action with

a full reservation of its rights to pursue arbitration of the underlying disputes, and the instant proceeding is brought to: (a) establish quasi in rem jurisdiction over Defendants pursuant to Supplemental Rule B; and (b) obtain security for LDCF's claims against Defendants.

**The COAs**

7.      With respect to the First COA, on or about April 4, 2014, LDCF (as owners) and UGML (as charterers) entered into a COA for the carriage of ten cargoes of 75,000 MT each (10% more or less in owners' option) harmless coking coal from certain Australian ports to certain Indian ports.  The shipments were to be made on a fairly and evenly spread basis during the period April 1, 2014 through March 31, 2015.  Further detailed terms were set forth in the COA.  Additionally, the First COA provided that the underlying merits of any disputes would be resolved by arbitration, conducted outside of the United States at a seat and in accordance with arbitral rules set forth in the First COA, with English law to apply.

8.      With respect to the Second COA, on or about November 24, 2014, LDCF (as owners) and UGML (as charterers) entered into a COA for the carriage of ten cargoes (minus one in charterers' option) of 75,000 MT each (10% more or less in owners' option) harmless coking coal from certain Australian ports to certain Indian ports.  The shipments were to be made on a fairly and evenly spread basis during the period May 1, 2015 through April 30, 2016.  Further detailed terms were set forth in the COA.  Additionally, the Second COA provided that the underlying merits of any disputes would be resolved by arbitration, conducted outside of the United States at a seat and in accordance with arbitral rules set forth in the Second COA, with English law to apply.

9. Accordingly, pursuant to both the First COA and the Second COA, UGML owed obligations to provide ten cargoes (per COA and with a minus one option under the Second COA only) in the aforementioned amounts to be carried on vessels provided by LDCF.

10. With respect to the First COA, UGML failed to comply with its obligations because it only provided eight cargoes for shipment such that two shipments went unfulfilled, causing LDCF to suffer damages equal to, at least, **$1,505,239.80** plus interest which continues to accrue.

11. With respect to the First COA, UGML also breached its obligations by failing to pay the full amount of freight and demurrage which became due on account of the cargoes which were provided. Unpaid freight and demurrage amount to the total, principal sum of **$274,472.11** plus interest which continues to accrue.

12. With respect to the Second COA, UGML failed to comply with its obligation to provide nine cargoes (i.e., the ten cargoes minus one in charterers' option) causing LDCF to suffer damages equal to, at least, **$4,300,699.01** plus interest which continues to accrue.

13. UGML has therefore breached and/or repudiated its obligations under both COAs, causing LDCF to suffer damages equal: a total, principal amount of, at least, **$6,080,410.92**; plus interest accrued up to March 31, 2017 in the amount of approximately **$197,475.14** and continuing to accrue; plus LDCF's costs (incurred and projected) for enforcing its rights against UGML in arbitration which LDCF estimates will equal, approximately **$450,000** (recoverable under the applicable arbitral rules).

14. Accordingly, as at March 31, 2017, the aggregate amount of LDCF's claim against UGML, as best can now be calculated, stands at **$6,727,886.06**.

## ALTER EGO RELATIONSHIP AMONG DEFENDANTS

15.     Pursuant to maritime law, UGSL is also liable for all of LDCF's claims against UGML because UGSL dominates and controls UGML to such a degree that the latter is actually performing the former's business, rather than its own.

16.     Numerous facts demonstrate the existence of an alter ego relationship amongst UGSL and UGML.

**Common ownership**

17.     UGML and UGSL have overlapping ownership.  UGML was established and promoted by members of a family bearing the surname "Miglani" (the "Miglani Family") in or about September 2007.  Members of the Miglani Family are also the promoters of UGSL.

18.     On information and belief, members of the Miglani Family and/or UGSL maintain beneficial majority ownership of UGML by way of holding vehicles such as Archisha Steels Private Limited (approximate 21% ownership of UGML as of August 2015), Grow Well Mercantile Private Limited (approximately 5% ownership of UGML as of August 2015), Revive Buildzone and Dealers Private Limited (approximately 24% ownership of UGML as of August 2015) and Spiral Pack (India) Ltd. (approximately 5% ownership of UGML as of August 2015).

19.     UGSL's Annual Report for 2015-2016 identifies Grow Well (or "Growell") and Archisha (as well as UGML itself) as "associates . . . over which key management personnel and/or their relatives exercise significant influence."  Likewise, UGSL director Rajinder Miglani is also a director of Revive, and UGSL director Anuj Miglani is also a director of Revive and Spiral.

20.     Indeed, in a November 2, 2015 letter to United States Secretary of Commerce, attorneys for UGML readily identified the Miglani Family as, at that time, having a 52.59% stake in UGML.

21.     On information and belief, a related, May 24, 2016, report from the Department of Commerce also determined that UGML and UGSL were "cross-owned" which, according to 19 CFR 351.525(b)(6)(vi) means that "one corporation can use or direct the individual assets of the other corporation(s) in essentially the same ways it can use its own assets."

**Common officers and directors**

22.     UGML and UGSL also share multiple overlapping directors, including Rajinder Miglani, Anuj Miglani, and BL Khurana (according to UGSL's March 2016 annual report).

**Common office space**

23.     UGML and UGSL also use the same office address, namely 69 d'Mello Road in Mumbai.

24.     Keeping in mind that the underlying dispute at issue also arises from COAs calling from the carriage of cargoes to Indian ports, it is important to note that Indian import records evidence that: (a) UGML and UGSL use the same phone number (665-63-506) for import / consignee contact purposes; and (b) UGML and UGSL use the same email address (jho@uttamgalva.com) for the same purposes.

**Intra-group Guarantees**

25.     UGSL has also guaranteed UGML's debts.  For example, UGSL's 2015 annual report provides that it "had given a corporate guarantee of 87.54 Crore to the Commissioner of Customs against export obligation of Uttam Galva Metallics Limited."

## FIRST CAUSE OF ACTION
### (breach and repudiation of maritime contracts against UGML)

26.     Paragraphs 1 through 25 of this Complaint are repeated and realleged as if the same were set forth here at length.

27.     UGML breached and repudiated its obligations under the First and Second COAs.

28.     LDCF thereby sustained damages which, as best can now be estimated, amount to at least **$6,277,886.06**.

## SECOND CAUSE OF ACTION
### (alter ego liability against UGSL)

29.     Paragraphs 1 through 28 of this Complaint are repeated and realleged as if the same were set forth here at length.

30.     UGML is a mere alter ego of UGSL which completely dominates and controls UGML.

31.     UGSL is thereby liable to LDCF for UGML's breach and repudiation of the subject COAs in an amount which, as best can now be estimated, is equal to at least **$6,277,886.06**.

## RULE B ATTACHMENT

32.     Paragraphs 1 through 31 of this Complaint are repeated and realleged as if the same were set forth here at length.

33.     Pursuant to the terms of the COAs, disputes are to be resolved by arbitration, conducted outside of the United States at a seat and in accordance with arbitral rules set forth in the COA, with English law to apply.  Plaintiff therefore expressly reserves the right to arbitrate the merits of its dispute as provided for under the COAs and brings this action solely to obtain quasi in rem jurisdiction and security for its damages plus interest and the costs for the

arbitration.  Notably, UGML was even due to serve its response in the underlying arbitration by April 4, 2017.  It could have elected to make such service by email, as is often done.  However, as of the date of this filing, no such response has been received by Plaintiff.

34.     Upon information and belief, and after investigation, Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Admiralty or Maritime Claims, but Plaintiff is informed that Defendants have, or will shortly have, property subject to attachment within this District.

35.     Specifically, UGSL owns an entity called Uttam Galva North America, Inc. ("UG North America") which maintains its principal executive office at 1500 Broadway, Suite 1603, New York, New York.

36.     UG North America also routinely receives shipments of valuable cargoes which are consigned to it by UGSL.

37.     On information and belief, UG North America pays substantial sums of money to UGSL for such routinely shipped cargoes.

38.     Accordingly, UG North America's debts owed to UGSL, as well as UGSL's ownership of UG North America, constitute property of UGSL which can be attached within this District pursuant to Rule B.

39.     The total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims by Plaintiff against Defendants includes: (i) the principal claim in the amount of **$6,080,410.92**; (ii) interest, of **$197,475.14** up to March 31, 2017, which continues to accrue; and (iii) estimated attorneys' fees and disbursements, together with the costs of the arbitration, including arbitrators fees, all of which are recoverable under applicable arbitral rules, in the amount of **$450,000**, for a total claim of **$6,727,886.06**.

**WHEREFORE**, Plaintiff prays as follows:

1.     That process in due form of law according to the practice of this Court may issue against Defendants;

2.     That the Court, in accordance with the provisions of Rule B of the Supplemental Rules for Admiralty or Maritime Claims, direct the issuance of Process of Maritime Attachment and Garnishment attaching all assets within the District owned by Defendants or in which Defendants have a beneficial interest up to the amount of **$6,727,886.06** so as to establish quasi in rem jurisdiction over the Defendants and to serve as security for subsequent enforcement of an arbitral award and judgment; and

3.     That the Court grants such other, further and different relief as may be just, proper and equitable.

Dated:   New York, New York
         April 6, 2017                            EATON & VAN WINKLE LLP

                                                  By: /s/ Edward W. Floyd
                                                      Edward W. Floyd, Esq.
                                                      3 Park Avenue
                                                      New York, New York 10016
                                                      212.779.9910
                                                      efloyd@evw.com

                                                      *Attorneys for Plaintiff*

## VERIFICATION

Edward W. Floyd, Esq., pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1.      I am an attorney admitted to practice before this Court and am a partner with the firm of Eaton & Van Winkle LLP, attorneys for Plaintiff, and I make this verification on behalf of Plaintiff.

2.      I have read the foregoing complaint and know the contents thereof and the same are true to the best of my knowledge, information and belief.  The sources of my information and the grounds for my belief are communications received from the Plaintiff and the London solicitors for Plaintiff and an examination of the papers relating to the matters in suit.

3.      The reason this verification is made by the undersigned, and not made by Plaintiff, is that Plaintiff is a foreign corporation or other business entity, no officer or director of which is presently within this District.

4.      Plaintiff has not made any prior attachment applications with respect to the matters in suit.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
     April 6, 2017

                                            /s/ Edward W. Floyd
                                            Edward W. Floyd, Esq.

## DECLARATION

Edward W. Floyd, pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1.    I am an attorney admitted to practice before this Court and am a partner with the firm of Eaton & Van Winkle LLP, attorneys for Plaintiff, and I am familiar with the facts of this matter.

2.    To the best of my information and belief, the Defendants cannot be found within this District as defined by the relevant State and Federal Rules of Civil Procedure.

4.    I caused a search to be made by going to the New York State Department of State website (www.dos.state.ny.us) and searching the Corporation and Business Entity Database for each Defendant.  This database contained no record of the Defendants having authority to do business in New York.  I also searched online telephone directories for New York and found no listings for the Defendants in this District.

6.    I am also unaware of any general or managing agents within this District for Defendants.

7.    I therefore respectfully request, on behalf of the Plaintiff, that the Court issue an order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment with respect to the Defendants' property within the District.

Dated: New York, New York
      April 6, 2017

/s/ Edward W. Floyd
Edward W. Floyd, Esq.

## DECLARATION IN SUPPORT OF AN ORDER APPOINTING
## A PERSON TO SERVE PROCESS

Edward W. Floyd, pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1.      I am an attorney admitted to practice before this Court and am a partner with the firm of Eaton & Van Winkle LLP, attorneys for Plaintiff.

2.      I make this Declaration in support of Plaintiff's application, pursuant to the provisions of Rule 4(c) of the Federal Rules of Civil Procedure and the provisions of Rule B(1)(d)(ii) of the Supplemental Rules for Admiralty or Maritime Claims, for an Order appointing Edward W. Floyd or any other partner, associate, paralegal or agent of Eaton & Van Winkle LLP, in addition to the United States Marshal, to serve Process of Maritime Attachment and Garnishment on the garnishees listed in the Process, together with other possible garnishees.

3.      The partners, associates, paralegals or agents of Eaton & Van Winkle LLP, who will be designated, are over 18 years of age, and are not a party to this action.

4.      Plaintiff desires to serve the Process of Maritime Attachment and Garnishment on the garnishees promptly so that Plaintiff will be fully protected against the possibility of not being able to satisfy the arbitral award it is seeking (or any subsequent judgment confirming such award).

5.      Plaintiff respectfully requests, for the foregoing reasons, that the Court appoint Edward W. Floyd or any partner, associate, paralegal or agent of Eaton & Van Winkle LLP to serve the Process of Maritime Attachment and Garnishment upon the garnishees listed in the Process, together with any other garnishees that Plaintiff learns may hold assets of the Defendants.

6.    No previous application for this or similar relief has been made by Plaintiff with

respect to its dispute with the Defendants.

Dated: New York, New York
        April 6, 2017

                                        /s/ Edward W. Floyd
                                        Edward W. Floyd